UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


ACCESS NOW, INC., a not-for-profit
Florida corporation, et al.,

                Plaintiffs,

V.                                    CIVIL ACTION NO. 3-01CV0869-L

CRESTWOOD HEALTHCARE, L.P.,
et al.,

                Defendants.
_____/


## STIPULATION FOR SETTLEMENT AS TO DEFENDANT
## IOM HEALTH SYSTEM, LP D/B/A LUTHERAN HOSPITAL OF INDIANA

Defendant, IOM Health System, LP d/b/a Lutheran Hospital of Indiana and

Plaintiffs, ACCESS NOW, INC., DANIELLE BLACK, JULIO GRAU, and MARGARITA

GRAU, ("Named Plaintiffs"), on their own behalf and on behalf of the Plaintiff Class,

(collectively referred to as "the Parties"), hereby enter into the following Stipulation for

Settlement as to Defendant IOM Health System, LP  . ("Agreement"), for the purposes

and consideration set forth below.

TABLE OF CONTENTS

I.  RECITALS

II.  DEFINITIONS AND FACILITIES SUBJECT TO THIS AGREEMENT

  A.  Definitions
  B.  Settling Defendant's Facility(ies)
    1.  Wholly Owned Facility(ies)
    2.  Partially or Jointly Owned Facility(ies)
    3.  Leased Premises
  C.  Jurisdiction and Venue

III.  SUBSTANTIVE PHYSICAL ACCESS PROVISIONS

  A.  Modifications to existing facilities - Barrier Removal
  B.  Modifications to recently-constructed or altered facilities - Alteration Standard
  C.  Standards for Future Construction - New Construction Standard

IV.  PROGRAM FOR MODIFICATION OF SETTLING DEFENDANT'S FACILITIES FOR IMPROVED ACCESS

  A.  Introduction
  B.  General Requirement for Modifications To Settling Defendant's Facilities
  C.  Facility Modification Plan-Lutheran Hospital
  D.  Facility Modification Plan-Medical Office Building No. 1
  E.  Facility Modification Plan-Medical Office Building No. 2
  F.  Facility Modification Plan-RediMed Clinic
  G.  Facility Modification Plan-RediMed DeKalb & Physical Therapy
  H.  Facility Modification Plan-RediMed North & Physical Therapy
  I.  Facility Modification Plan-Family Medicine
  J.  Facility Modification Plan-RediMed Huntington & Physical Therapy
  K.  Facility Modification Plan-RediMed Southwest
  L.  Facility Modification Plan-BHS Clinic
  M.  Facility Modification Plan-RediMed Downtown
  N.  Facilities Over Which Settling Defendant Lacks Control

V.  DISPUTE RESOLUTION

  A.  Dispute Resolution Procedures
  B.  Standards

VI.  DEADLINES, FORCE MAJEURE AND ATTORNEYS' FEES

  A.  Deadlines

B.     After-Acquired, Sold, Closed and Lease-ending Facilities
C.     Deviations from ADAAG
D.     Force Majeure
E.     Attorneys' Fees

VII.   CLASS SETTLEMENT - NOTICE, FAIRNESS, REASONABLENESS

A.     Class Settlement
B.     Notice of Settlement
C.     Notice to Plaintiff Class
D.     Fairness and Reasonableness of this Agreement
E.     Cooperation in the Determination of Fairness

VIII.  FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT
       AND DISMISSING SETTLING DEFENDANT

A.     Procedure Following Fairness Hearing
B.     Parties to Cooperate in Attaining Final Order and Judgment

IX.    RELEASES AND COVENANTS NOT TO SUE

A.     Releases and Covenants Not to Sue by Named Plaintiffs and the Plaintiff
       Class
B.     Released Claims

X.     MISCELLANEOUS

A.     Cooperation
B.     Defense Documents
C.     Arms-Length Negotiations; Construction
D.     Reservation
E.     Entire Agreement
F.     Deadlines Falling on Weekends or Holidays
G.     Authority to Bind
H.     Multiple Originals/Execution in Counterparts
I.     Severability
J.     Modification of the Agreement

XI.    SIGNATURES

A.     Signatures of Counsel
B.     Signatures of the Parties

I.    RECITALS

A.    WHEREAS, IOM Health System, LP   ("Settling Defendant") owns and/or operates an acute care hospital with ancillary functions in those physical locations to be described below in the Fort Wayne, Indiana area.

B.    WHEREAS, Plaintiffs instituted and have maintained a lawsuit against Settling Defendant and affiliated Defendants owning and/or operating medical facilities or buildings where medical services are provided regarding the physical, communication, or operational accommodations for Persons with Disabilities at the facilities of the Settling Defendant and other Defendants, which lawsuit is hereinafter defined as the Access Now/Crestwood Litigation.

C.    WHEREAS, the Plaintiffs were certified as a class of plaintiffs, which class consists of:

> All people in the United States with disabilities as that term
> has been defined by 42 U.S.C. § 12102(2), including those
> persons who have an impairment that substantially limits a
> major life function, including but not limited to mobility,
> hearing, and sight, who have been and who were, prior to
> the filing of the Class Action Complaint through the
> pendency of this action, entitled to the full and equal
> enjoyment of the goods, services, programs, facilities,
> privileges, advantages, or accommodations of any of the
> Defendants' Facilities, because of their respective disabilities
> (the "Class")

by Order of the Honorable Sam A. Lindsay of the United States District Court for the Northern District of Texas, Dallas Division.

D.    WHEREAS, the Access Now/Crestwood Litigation has been vigorously prosecuted and defended.

E.    WHEREAS, the parties conducted extensive discovery.

F.      WHEREAS, the parties conducted an expert review and survey of the Facilities of the Settling Defendant, as described below, to evaluate physical, communication, and operational accommodations for Persons with Disabilities pertaining to Settling Defendant's Facilities.

G.      WHEREAS, Settling Defendant denies any and all liability to the Plaintiffs, the Class, or to any other actual or potential intervenor, and denies that it has violated any laws, rules, regulations, or ordinances - federal, state, or local - pertaining to access for Persons with Disabilities to its facilities.

H.      WHEREAS, the Parties now desire to resolve their differences and disputes by settling the Access Now/Crestwood Litigation as to the Settling Defendant in such a manner as to:

1.      Achieve improvements to access at Settling Defendant's Facilities, in a manner that satisfies Settling Defendant's obligations under this Agreement and which improves access for disabled persons under laws governing physical, communication, and operational access features for Persons with Disabilities at public accommodations, including the Americans with Disabilities Act (42 U.S.C. §§ 12101 *et seq.*), the rules and regulations promulgated pursuant thereto, including, but not limited to, ADAAG;

2.      Define, clarify, and compromise Settling Defendant's obligations under such laws, including barrier removal obligations;

3.      Achieve reasonable, practicable improvements to access that are readily achievable and technically feasible, and consistent with the fundamental

nature of Settling Defendant's business, for the benefit of both Settling
Defendant and its patrons;

4.     Assure that the Named Plaintiffs and the Class will not attempt to enforce,
and Settling Defendant will not thereby be subject to, conflicting
interpretation of federal standards regarding the physical, communication
and operational access features of its Facility(ies);

5.     Avoid the uncertainties and costs of further litigation in this action, for all
parties.

NOW, THEREFORE, in consideration of the mutual covenants and undertakings
contained herein, and other good and valuable consideration, the receipt and sufficiency
of which is hereby acknowledged by the parties, the parties agree to the following terms
and conditions as full and complete settlement of the action against Settling Defendant:

II.     DEFINITIONS AND FACILITIES SUBJECT TO AGREEMENT

A.     Definitions.

1.     "Access Now/Crestwood Litigation" means the civil action entitled
*Access Now, Inc., et al. v. Crestwood healthcare, L.P., et al.,*
bearing Case No. 3:01-CV-0869-L, pending in the United States
District Court for the Northern District of Texas, involving claims by
Plaintiffs and the Class regarding alleged violations of federal
accessibility laws at Defendants' Facility Locations nationwide.  The
Access Now/Crestwood Litigation encompasses any stipulated
injunctive orders entered or to be entered pursuant to Settlement
Agreements with Settling Defendants.

2.    "Accessible Parking Space" means a parking space reserved for

disabled patrons or visitors, including a van accessible parking

space.

3.    "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§

12101 *et seq.*

4.    "ADAAG" means the Americans with Disabilities Act Access

Guidelines set forth in 28 C.F.R. Part 36 and Appendix A thereto,

as promulgated by the Access Board and adopted by the

Department of Justice, in effect on the Approval Date (defined

below).

5.    "Agreement" means this Stipulation for Settlement between the

Named Plaintiffs and the Class, on the one hand, and the Settling

Defendant, on the other hand.

6.    "Alteration" shall have the meaning set forth in 28 C.F.R. §

36.402(b).

7.    "Approval Date" means the date upon which the Court enters an

Order approving this Agreement, after having determined that it is

fair, adequate and reasonable to the Class as a whole, after:  (i)

notice to the Class, consistent with the Court's Order granting Class

Certification dated July 26, 2002; (ii) an opportunity to submit timely

objections to the Agreement; (iii) appropriate discovery of the

specifics of any such timely objections; and (iv) a Fairness Hearing.

8.    "Class Counsel" means counsel for the Named Plaintiffs and the

Plaintiff Class in this action.  They are identified as Miguel M. de la

O, Esq., and David E. Marko, Esq., and all members, partners, employees and associates of the law firm of de la O & Marko, P.A.

9.    "Commercial Facility" means a commercial facility as that term is defined by the ADA at 42 U.S.C. § 12181(2) and the ADA's implementing regulations at 28 C.F.R. § 36.104.

10.   "Effective Date" means the date that the Parties present this Agreement to the Court by Notice of Partial Settlement and request a date for the Court to set a hearing to rule upon the fairness of this Agreement and to hear any intervening objections thereto.

11.   "Facility" or "Facilities" means those physical locations wherein the Settling Defendant conducts its operations and which the Settling Defendant either owns or operates, as described in more detail below in Section II.B., and as to which this Agreement is entered into.

12.   "Facility Locations" means those Facilities of all Defendants in the Access Now/Crestwood Litigation in a collective sense.

13.   "Fairness Hearing" means the hearing ordered by the Court after receipt and preliminary review and approval of the Agreement from the Parties' Notice of Partial Settlement, which hearing shall be for the purpose of the Court evaluating the fairness of the settlement to Class Members and deciding whether to give it Approval.

14.   "Final Approval" means the approval of this Agreement by the United States District Court for the Northern District of Texas on the Approval Date, and either (1) the expiration of the time for filing of a

8

direct appeal from the Court's approval of the Agreement without the filing of a notice of appeal, or (2) if a timely direct appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petitions for certiorari), resulting in final judicial approval of the Agreement.

15. "Final Approval Date" is the date upon which Final Approval of this Agreement is attained.

16. "Final Order and Judgment Approving Class Action Settlement and Dismissing Settling Defendant" means that Order and Judgment to be entered by the Court, following a Fairness Hearing, if the Court adjudges that this Agreement is fair, adequate, and reasonable and should be given Approval. Any Final Order and Judgment entered following a Fairness Hearing on this Agreement shall attain Final Approval on the Final Approval Date, and no party thereto shall be obligated to consummate the terms of the Agreement until Final Approval has been attained.

17. "Lavatory" means a hand washing fixture, whether wall-mounted or cabinet-mounted.

18. "Leased Premises" means an office, suite or other building area, up to and including a complete building structure, which is leased by the Settling Defendant and is wholly or partially operated as a place of public accommodation, and for which, under the terms of the lease agreement, the Settling Defendant is responsible for ADA

compliance as to either the interior of the Leased Premises or the exterior and/or common area of the Leased Premises, or both.

19. "Named Plaintiffs" means those named Plaintiffs who are designated to represent the Plaintiff Class, including, Danielle Black, Julio Grau, and Margarita Grau, and such other individuals who may be later named as representative Plaintiffs for the Plaintiff Class in this action.

20. "Notice of Partial Settlement" means that Notice to be provided by the Parties to the Court indicating that the Parties have reached a settlement agreement as to one or more Defendants in this action, which Notice of Partial Settlement shall request preliminary approval of this Agreement and a date and time for a hearing to evaluate the fairness of this Agreement and any intervening objections thereto.

21. "Persons with Disabilities" means and includes persons with disabilities and disabling conditions, including by way of example only mobility, vision, and hearing impairments.

22. "Place of public accommodation" means a place of public accommodation as that term is defined by the ADA at 42 U.S.C. § 12181(7) and the ADA's implementing regulations at 28 C.F.R. § 36.104.

23. "Plaintiff Class" means the Class of Plaintiffs as defined and certified in Access Now/Crestwood Litigation and may also be referred to as the "Class."

24.   "Preliminary Approval Date" means the date upon which the Court
enters, following Notice of Partial Settlement and evaluation of the
Agreement by the Court, an Order preliminarily approving this
Agreement, pending notice, an opportunity for Named Plaintiffs or
Class Members to submit objections, and a fairness hearing
thereon.

25.   "Readily achievable" shall have the meaning set forth in 28 C.F.R. §
36.104.

26.   "Release Effective Period" means that period of time following Final
Approval of this Agreement during which the Settling Defendant will
apply for necessary regulatory approval and make the barrier
removal and/or other modifications under this Agreement, subject
to the deadline set forth in Section VI.A.1.

27.   "Settling Defendant," as used herein, means Defendant IOM Health
System, LP d/b/a Lutheran Hospital of Indiana, located as
described in Section II.B.

28.   "Title III" means specifically Title III of the ADA, 42 U.S.C. §§
12181-12189, and the implementing regulations in 28 C.F.R. Part
36 and Appendix A in effect on the date of the execution of this
Agreement.

29.   "Universal Equivalent" or "Universal Parking Space Design" refers
to the provision of all Accessible Parking Spaces at the dimensions
required for a van-accessible Accessible Parking Space (132

inches wide with a 60-inch-wide access aisle, pursuant to ADAAG 4.1.2(5)(b).

30. "Water closet" means a toilet, whether wall-mounted or floor-mounted.

B. Settling Defendant's Facility(ies):

1. Settling Defendant owns the following property, which is a Facility Location in this litigation and specifically a subject Facility in this Settlement Agreement:

a. Lutheran Hospital, 7950 West Jefferson Boulevard, Fort Wayne, Indiana 46804 (Hospital)

b. Medical Office Building No. 1, 7900 West Jefferson Boulevard, Fort Wayne, Indiana, 46804 (Medical Office Building)

c. Medical Office Building No. 2, 7910 West Jefferson Boulevard, Fort Wayne, Indiana, 46804 (Medical Office Building)

d. RediMed Clinic, 3717 Maplecrest Road, Fort Wayne, Indiana 46804 (Clinic)

e. RediMed DeKalb and Physical Therapy, 253 N. Grandstaff, Indiana (Clinic)

f. Family Medicine, 155 W. Eighth Street

g. RediMed Huntington and Physicial Therapy, 1415 Flaxmill Road, Indiana (Clinic)

h. RediMed Southwest, 7333 West Jefferson Boulevard, Fort Wayne, Indiana 46804 (Clinic)

i. BHS Clinic, 5932 West Jefferson Boulevard, Fort Wayne, Indiana 46804 (Clinic)

j.      RediMed Downtown, 800 Broadway, Fort Wayne, Indiana

46804 (Clinic)

C.     Jurisdiction and Venue:

1.      This Court has jurisdiction over this action under 42 U.S.C. §

12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345, and over the parties to this action.

The Named Plaintiffs and the Class assert claims that, if proven, would authorize the

Court to grant the equitable relief set forth in this Agreement.

2.      Venue is appropriate in this district.

3.      This Court shall retain jurisdiction of this action, during the duration

of the Agreement and any order entered pursuant thereto, solely for the purpose of

entering all orders authorized hereunder which may be necessary to implement the

relief provided herein and of resolving any disputes arising as part of the implementation

of this Agreement and any orders entered thereunder.

III.    SUBSTANTIVE PHYSICAL ACCESS PROVISIONS

A.     Modifications to existing facilities - Barrier Removal

Architectural and communication barriers that are structural in nature in

places of public accommodation or commercial facilities must be removed if removal is

readily achievable and technically feasible.  If a particular barrier removal is not readily

achievable, then the Settling Defendant may use readily achievable alternative

methods, consistent with this Agreement and prior Orders of the Court, to make its

Facilities as accessible and its goods and services as available as possible.  This

standard applies to those places of public accommodation and commercial facilities

which were constructed for first occupancy on or before January 26, 1992. *See* 28

C.F.R. §§ 36.304 - 36.305.

B.      Modifications to recently-constructed or altered facilities - Alteration
Standard

        If an alteration in a place of public accommodation or commercial facility
was begun after January 26, 1992, that alteration must be readily accessible to and
usable by individuals with disabilities to the maximum extent feasible in accordance with
the ADAAGs. *See* 28 C.F.R. §§ 36.402 - 36.403.

C.      Standards for Post-1992 Construction - New Construction Standard

        Newly constructed places of public accommodation must be readily
accessible to and usable by individuals with disabilities to the extent that it is not
structurally impossible.  This standard applies to those places of public accommodation
which were available for first occupancy on or after January 26, 1993.  *See* 42 U.S.C. §
12183(a)(1); 28 C.F.R. § 36.401.

IV.     PROGRAM FOR MODIFICATION OF SETTLING DEFENDANT'S FACILITIES
        FOR IMPROVED ACCESS

A.      Introduction

        The Settling Defendant owns, operates, and/or maintains the Facilities
described in Section II.B.  The Parties conducted discovery at and related to those
Facilities as part of the Access Now/Crestwood Litigation.  The Parties identified, as
more fully described below, modifications which the Parties believe in good faith would
improve the accessibility to and usability of those Facilities as well as the services
and/or programs provided in those Facilities, as contemplated by Title III of the ADA and
its implementing regulations or by applicable federal, state or local laws, rules,
regulations or ordinances of similar purpose.  The Parties have agreed, with respect to
the Settling Defendant's Facilities, that certain modifications will be done as set forth

                                          14

below and that, to the extent a possible modification is not set forth below, such potential modification is not required of the Settling Defendant under this Agreement. The Parties agree and understand that the obligations of the Settling Defendant to modify the Settling Defendant's Facility(ies) are limited specifically to those items set forth in Paragraphs B, C, D, E and F, below.

B.      General Requirements for Modifications to Settling Defendant's Facilities

1.      In accordance with the standards delineated in Section III above, Defendant shall cause modifications to its Facilities and policies to bring about the removal of physical, communication, and operational barriers to allow disabled persons the full enjoyment of the goods and services provided by Settling Defendant at its Facility(ies).

2.      The modifications to be made to the Settling Defendant's Facility(ies) as identified in Section II.B. above are described in the "Facility Modification Plans" attached and made a part hereof, as Exhibit 1, for the Defendant Facility(ies) commonly known as:

1.      Lutheran Hospital;

2.      Medical Office Building No. 1;

3.      Medical Office Building No. 2;

4.      RediMed Clinic;

5.      RediMed DeKalb & Physical Therapy;

6.      RediMed North & Physical Therapy;

7.      Family Medicine;

8.      RediMed Huntington & Physical Therapy;

9.      RediMed Southwest;

10.    BHS Clinic; and

11.    RediMed Downtown.

3.    If a conflict arises between this Sub-Section IV.B., or the attached exhibits, and any Orders of the Court, incorporated by reference hereto, the Orders of the Court shall govern but will not nullify or alter the remaining portions of this Sub-Section IV.B. or the attached exhibits.

4.    If any conflicts exist between this Sub-Section IV.B. and any of the attached exhibits with regard to the physical modifications to be performed at Settling Defendant's Facilities only, the exhibits shall govern, with the exception that references to ADAAG apply to buildings built and occupied prior to January 26, 1993, only to the extent that the removal of barriers is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.  For all other conflicts regarding this Sub-Section IV.B. and the attached exhibits, the provisions for resolving conflicts contained in Section V shall govern.

5.    As a general requirement, the following ADA modifications shall be achieved no later than the date specified in Section VI below within Settling Defendant's Facilities:

a.    General Signage - Permanent hospital signage designating permanent rooms and spaces or providing direction to or information about functional spaces of the building shall comply with the requirements of ADAAG §§ 4.1.3(16) and 4.30.

b.    Policies - Policies provided for in the course and scope of this Agreement shall be written and shall be disclosed to all employees charged with implementing said policy;

16

c.   Parking - Defendant shall comply with the following ADAAG provisions regarding minimum parking requirements:

§4.1.2(1).  At least one accessible route complying with §4.3 shall be provided within the boundary of the Facility site from public transportation stops, accessible parking spaces, passenger loading zones if provided, and public streets or sidewalks, to an accessible building entrance.

§4.1.2(2).  At least one accessible route complying with §4.3 shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same Facility site.

§4.1.2(4).  Ground surfaces along accessible routes and in accessible spaces shall comply with §4.5.

§4.1.2(5)(a).  If parking spaces are provided for self-parking by visitors then accessible spaces complying with §4.6 shall be provided in each such parking area in conformance with the table below.  Spaces required by the table need not be provided in the particular lot.  They may be provided in a different location if equivalent or greater accessibility, in terms of distance from an accessible entrance, cost and convenience is ensured.

| Total Parking in Lot | Minimum Number of Accessible Spaces |
|---|---|
| 1  to  25 | 1 |
| 26  to  50 | 2 |
| 51  to  75 | 3 |
| 76  to  100 | 4 |
| 101  to  150 | 5 |
| 151  to  200 | 6 |
| 201  to  300 | 7 |
| 301  to  400 | 8 |
| 401  to  500 | 9 |

17

| | |
|---|---|
| 501 to 1000 | 2 percent of total |
| 1001 and over | 20 plus 1 for each |
| | 100 over 1000 |

Except as provided in §4.1.2(5)(b), access aisles adjacent to accessible spaces shall be 60 inches wide minimum.

§4.1.2(5)(b).  One in every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in (240 mm) wide minimum and shall be designated "van accessible" as required by §4.6.4.  The vertical clearance at such spaces shall comply with §4.6.5.  All such spaces may be grouped on one level of a parking structure.

§4.1.2(5)(c).  If passenger loading zones are provided, then at least one passenger loading zone shall comply with §4.6.6.

§4.1.2(5)(d).  At facilities providing medical care and other services for persons with mobility impairments, parking spaces complying with §4.6 shall be provided in accordance with §4.1.2(5)(a) except as follows:

§4.1.2(5)(d)(I) Outpatient units and facilities: 10 percent of the total number of parking spaces provided serving each such outpatient unit or facility;

In addition, Defendant shall comply with the following ADAAG provisions regarding the parking spaces:

§4.6.2. Location.  Accessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance.  In parking facilities that do not serve a particular building, accessible parking shall be located on the shortest accessible route of travel to an accessible pedestrian entrance of the

18

parking facility.  In buildings with multiple accessible entrances with adjacent parking, accessible parking spaces shall be dispersed and located closest to the accessible entrances.

§4.6.3. Parking Spaces.  Accessible parking spaces shall comply with ADAAG §4.6.3.  Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with §4.3.  Two accessible parking spaces may share a common access aisle (see ADAAG Fig. 9).  Parked vehicle overhangs shall not reduce the clear width of an accessible route.  Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions.

§4.6.4. Signage.  Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (see §4.30.7). Such signs shall be located so they cannot be obscured by a vehicle parked in the space.

d.  Patient Bedrooms - The Parties agree to follow the terms of the ADA, its implementing regulations, and the ADAAGs, specifically including but not limited to ADAAG section 6, with respect to patient bedrooms.  In addition, Settling Defendant will attempt to make at least one patient bedroom and restroom accessible, to the extent feasible, among each of those categories of service which the Settling Defendant's hospital Facility has, guided by the following general category designations:  obstetrics, long-term care, rehabilitation, labor/delivery/recovery/postpartum ("LDRP"), medical/surgical, pediatrics, in-patient psychiatric, intensive care/critical care unit ("ICU"/"CCU"), surgical intensive care unit ("SICU"), pediatric

intensive care unit ("PICU"), cardiac intensive care unit ("CICU"), neonatal intensive care unit ("NICU"), and Hospice.

e.    Elevators – Public use elevators in Settling Defendant's Facility(ies) shall be modified to fully comply with the requirements of ADAAG §§4.1.6 and 4.10;

f.    Door Hardware – Some of the doors in public areas of Settling Defendant's facilities have knob-type hardware.  Knob-type door hardware on public doors shall be replaced with handles, pulls, latches, locks, or other operating devices which have a shape that is easy to grasp with one hand and do not require tight grasping, tight pinching, or twisting of the wrist to operate to comply with ADAAG § 4.13.9.  Lever-operated mechanisms, push-type mechanisms, and U-shaped handles are acceptable designs.  Hardware required for accessible door passage shall be mounted no higher than 48 inches above the finished floor, to comply with ADAAG § 4.13.9.

g.    Door Pressure – In addition, some of the doors in public areas of Settling Defendant's Facility(ies) have door closers which require opening forces in excess of 5 pounds of force (for interior doors) and close at inappropriate speeds.  Closers on interior doors for public use shall be adjusted to provide the minimum force necessary to close public use doors effectively, in compliance with ADAAG §4.13.11, to an extent not in conflict with the Life Safety Code (to be latched when required by the code).  Additionally, on doors with closers the sweep period shall be adjusted so that from an

open position of 70 degrees, the door will take at least 3 seconds to move to a point 3 in. (75 mm) from the latch, to comply with ADAAG § 4.13.10;

h.    Closed caption/video – All televisions in waiting rooms or public common spaces in the Facility(ies) shall provide effective communication by being closed captioned compatible. Instructions shall be posted on or near such equipment indicating how to activate the closed captioning setting. Training or instructional videos for viewing by the public purchased and/or used by the Facility(ies) shall be preferred to be closed captioned; if such videos are not closed captioned, the Facility shall make the content of the video available in an alternate format if such alternate format is requested and shall inform the public of the availability of alternate format materials;

i.    Printed Information for Distribution – Printed information which is published or purchased by Settling Defendant and made available for public distribution in the Facility(ies) shall be made available in one or more alternate formats to assist individuals with communication disabilities with any specific needs as related to such printed information of the hospital, in compliance with 28 CFR Part 36 Ch. 1, §36.303; and

j.    Public telephones – Settling Defendant shall provide public telephones to comply with the ADAAG. All telephones required to be accessible and complying with §4.31.2 through §4.31.8 shall be hearing aid compatible and have volume control. In addition, twenty five percent (25%) of all other public telephones provided shall be equipped with a volume control and shall be disbursed among all types of public telephones throughout the facility. Settling Defendant shall provide one secured TTY unit in the

emergency department waiting area and shall have portable TTY units at the rate of one per floor on the premises.  Such TTY units shall be kept available twenty-four (24) hours a day, seven (7) days a week.  Settling Defendant shall post signage in every designated waiting area instructing the public that such TTY units are available upon request.

6.      In the event the alterations and modifications required hereby are not timely completed due to circumstances within Settling Defendant's control, excluding those circumstances delineated in Section VI, Plaintiffs shall follow the procedure set forth in Section V for conflict resolution.  However, Defendants shall not be responsible for alterations or modifications to spaces which existed at the time of the survey but have since been eliminated.

7.      Settling Defendant agrees to establish and implement an Auxiliary Aids and Services Policy and Service Animal Policy incorporating and according to the following general principles:

(a)      Auxiliary Aids and Services.  As soon as practicable after Final Approval of this Stipulation and Agreement, Settling Defendant will implement a policy with respect to auxiliary aids and services to be provided to sensory impaired individuals in its Facility(ies) which policy will at a minimum:

(i)      govern the provision, to patients and to a family member or friend of a patient participating in treatment discussions and decision-making for the patient who are blind or visually impaired, of any of the following appropriate auxiliary aids and services that may be necessary for effective communication, as soon as practicable after making such determination:  qualified readers, taped texts, audio recordings, large print materials, staff available to assist in locating items and other

effective methods of making visually delivered materials available to individuals with visual impairments;

(ii)   govern the provision, to patients and to any family member or friend of a patient participating in treatment discussions and decision-making for the patient who are deaf or hard of hearing, of any of the following appropriate auxiliary aids and services that may be necessary for effective communication, as soon as practicable after making such determination:  written materials, note takers, assistive listening devices, and sign language interpreters when the nature of the material or instructions being communicated dictates their use;

(iii)   provide guidelines to determine when sign language interpreters are appropriate or necessary;

(iv)   designate an individual or office at the Settling Defendant to maintain full information about access to and the operation of the Program ("Information Office") and to coordinate implementation and maintenance of the Program;

(v)   designate an individual or office at the Settling Defendant to answer questions and provide appropriate assistance regarding immediate access to and proper use of the appropriate auxiliary aids and services available under the Program; and

(vi)   establish a complaint and complaint resolution procedure with relation to the provision of auxiliary aids and services.

(b)   Settling Defendant will implement an Auxiliary Aids and Services Policy in substantially the same form as the document attached hereto as Exhibit 2.

(c)   Service Animals Policy.  As soon as practicable after Final Approval of this Stipulation and Agreement, Settling Defendant will implement a policy with

23

respect to the entry of service animals on the premises of its Facility(ies) and any limitations on the care of, behavior of, or sanitary concerns with respect to any service animals so permitted on the premises of Settling Defendant's Facility(ies), which policy will at a minimum:

    (i)     govern the entry of service animals onto and around the premises of the Settling Defendant's Facility(ies);

    (ii)    govern the conduct of employees and staff with respect to the entry of service animals and their care and conduct while in the Facility(ies);

    (iii)   establish the obligations of persons with a service or therapy animal (or handlers of those animals), including with respect to the care and feeding of the animal, toileting of the animal, and behavior of the animal while at the Facility(ies);

    (iv)   establishing guidelines for when a service animal may be required to be removed from or be excluded from the Facility(ies); and

    (v)    outlining areas off limits to services animals due to health and safety concerns.

    (d)    Settling Defendant will implement a Service Animal Policy in substantially the same form as the document attached hereto as Exhibit 3.

    (e)    Drinking Fountain Policy. As soon as practicable after Final Approval of this Stipulation and Agreement, Settling Defendant will implement a policy with respect to the access of drinking fountains on the premises of its Facility (ies), which policy will at a minimum:

    (i)     establish guidelines for where they are provided;

    (ii)    where more than one drinking fountain or water cooler is provided on a floor, establish the percentage of low fountains that are accessible to

individuals who use wheelchairs and the percentage of high fountains that are accessible to individuals who have difficulty bending or stooping;

      (f)    Settling Defendant will implement a Drinking Fountain Policy in substantially the same form as the document attached hereto as Exhibit 4.

    C.    Lutheran Hospital - Modification Plan

        1.    Introduction

            Lutheran Hospital is owned and operated by the Settling Defendant.

        2.    Alterations Under Facility Modification Plan

            Settling Defendant will make changes in that space owned and operated, or operated only, by Settling Defendant in Lutheran Hospital.  Specifically, Settling Defendant will make alterations as set forth in the Facility Modification Plan attached hereto as Exhibit 1.

    D.    Medical Office Building No. 1 - Modification Plan

        1.    Introduction

            Medical Office Building No. 1 is owned and operated by the Settling Defendant.

        2.    Alterations Under Facility Modification Plan

            Settling Defendant will make changes in that space owned and operated, or operated only, by Settling Defendant in the Medical Office Building No. 1.  Specifically, Settling Defendant will make alterations as set forth in the Facility Modification Plan attached hereto as Exhibit 1.

E.    Medical Office Building No. 2 - Modification Plan

1.    Introduction

Medical Office Building No. 2 is owned and operated by the Settling
Defendant.

2.    Alterations Under Facility Modification Plan

Settling Defendant will make changes in that space owned and
operated, or operated only, by Settling Defendant in the Medical
Office Building No. 2.  Specifically, Settling Defendant will make
alterations as set forth in the Facility Modification Plan attached
hereto as Exhibit 1.

F.    RediMed Clinic - Modification Plan

1.    Introduction

RediMed Clinic is owned and operated by the Settling Defendant.

2.    Alterations Under Facility Modification Plan

Settling Defendant will make changes in that space owned and
operated, or operated only, by Settling Defendant in the RediMed
Clinic.  Specifically, Settling Defendant will make alterations as set
forth in the Facility Modification Plan attached hereto as Exhibit 1.

G.    RediMed DeKalb & Physical Therapy - Modification Plan

1.    Introduction

RediMed DeKalb & Physical Therapy is owned and operated by the
Settling Defendant.

2.    Alterations Under Facility Modification Plan

Settling Defendant will make changes in that space owned and operated, or operated only, by Settling Defendant in the RediMed DeKalb & Physical Therapy.  Specifically, Settling Defendant will make alterations as set forth in the Facility Modification Plan attached hereto as Exhibit 1.

H.    RediMed North & Physical Therapy - Modification Plan

1.    Introduction

RediMed North & Physical Therapy is owned and operated by the Settling Defendant.

2.    Alterations Under Facility Modification Plan

Settling Defendant will make changes in that space owned and operated, or operated only, by Settling Defendant in the RediMed North & Physical Therapy.  Specifically, Settling Defendant will make alterations as set forth in the Facility Modification Plan attached hereto as Exhibit 1.

I.    Family Medicine - Modification Plan

1.    Introduction

Family Medicine is owned and operated by the Settling Defendant.

2.    Alterations Under Facility Modification Plan

Settling Defendant will make changes in that space owned and operated, or operated only, by Settling Defendant in Family Medicine.  Specifically, Settling Defendant will make alterations as set forth in the Facility Modification Plan attached hereto as Exhibit 1.

J.     RediMed Huntington & Physical Therapy - Modification Plan

     1.     Introduction

          RediMed Huntington & Physical Therapy is owned and operated by the Settling Defendant.

     2.     Alterations Under Facility Modification Plan

          Settling Defendant will make changes in that space owned and operated, or operated only, by Settling Defendant in RediMed Huntington & Physical Therapy.  Specifically, Settling Defendant will make alterations as set forth in the Facility Modification Plan attached hereto as Exhibit 1.

K.     RediMed Southwest - Modification Plan

     1.     Introduction

          RediMed Southwest is owned and operated by the Settling Defendant.

     2.     Alterations Under Facility Modification Plan

          Settling Defendant will make changes in that space owned and operated, or operated only, by Settling Defendant in the RediMed Southwest.  Specifically, Settling Defendant will make alterations as set forth in the Facility Modification Plan attached hereto as Exhibit 1.

L.     BHS Clinic - Modification Plan

     1.     Introduction

          BHS Clinic is owned and operated by the Settling Defendant.

     2.     Alterations Under Facility Modification Plan

Settling Defendant will make changes in that space owned and

operated, or operated only, by Settling Defendant in BHS Clinic.

Specifically, Settling Defendant will make alterations as set forth in

the Facility Modification Plan attached hereto as Exhibit 1.

M.   RediMed Downtown - Modification Plan

1.   Introduction

RediMed Downtown is owned and operated by the Settling

Defendant.

2.   Alterations Under Facility Modification Plan

Settling Defendant will make changes in that space owned and

operated, or operated only, by Settling Defendant in RediMed

Downtown.  Specifically, Settling Defendant will make alterations as

set forth in the Facility Modification Plan attached hereto as Exhibit

1.

N.   Facility(ies) Over which Settling Defendant Lacks Control

1.   The Settling Defendant operates public accommodations in Leased

Premises, as set forth above, as to which the Settling Defendant has limited control and

authority with respect to the interior of the Leased Premises, or the exterior and/or

common areas of the Leased Premises, or both.  The Parties have agreed, with respect

to these Leased Premises, that the Settling Defendant will not be obligated to make any

modification to those parts of the building or structure housing the Leased Premises as

to which the Settling Defendant has no leasehold interest and no control.  Where the

Settling Defendant's leasehold interest does not extend to exterior or common areas at

the building or structure housing the Leased Premises, or the Settling Defendant does

not otherwise have the obligation to control the exterior or common areas at the Leased Premises, Settling Defendant will have discharged its obligations under the ADA and its implementing regulations, and any federal law, rule, regulation or ordinance of similar purpose, by complying with the specific modification obligations set forth above as to those areas of the Leased Premises over which Settling Defendant has the obligation to control, and no further modifications as to the Leased Premises can or will be demanded of the Settling Defendant, as set forth in sub-paragraph A., above.  To the extent this Defendant owns property leased to third parties and not identified herein, said property was not surveyed and is not covered by the terms of this Agreement.

V.     DISPUTE RESOLUTION

      A.     Dispute Resolution Procedures

          1.     Unless otherwise directed by the United States District Judge, or provided by this Agreement, the United States Magistrate Judge for the Northern District of Texas, Dallas Division, assigned to the Access Now/Crestwood Litigation shall have the authority to resolve all disputes arising under the Agreement, subject to the various limitations on enforcement, and to the pertinent enforcement standards, as set forth in this Agreement (solely by way of example, and not limitation, see Section V.B.), and the Parties hereby consent to referral of any motions pursuant to this Paragraph V.A. to the assigned United States Magistrate Judge for disposition.

          2.     If a dispute arises regarding the interpretation, implementation or performance of or compliance with this Agreement or any Court Order approving this Agreement and entering final judgment to that effect to be entered pursuant hereto, including any dispute as to who is bound by said Agreement or Order, it shall be resolved according to the following procedure:

a.    Written notice of any invocation of this dispute resolution
      procedure shall be given to all Parties to this Agreement by
      the initiating party.  It is expressly agreed and understood
      that notice to Class Counsel will suffice to serve as notice to
      the Named Plaintiffs and the Plaintiff Class, except that
      notice must be separately provided to third-party intervenors,
      if any, in this action.

b.    Written notice pursuant to Paragraph V.A. should contain a
      description of the dispute as understood by the initiating
      party, including: (a) a reference to all specific provisions of
      the Agreement that are involved; (b) a statement of the issue
      in dispute; (c) a statement of the remedial action sought by
      the initiating party; and (d) a brief statement  of the specific
      facts, circumstances and any other arguments supporting
      the position of the initiating party.  However, should a notice
      pursuant to Paragraph V.A. be received which does not
      contain each of these elements, it will not be rejected, but
      rather will be investigated in good faith to the extent possible
      based on the description of the dispute provided.

c.    Within twenty (20) days after receiving such notice, the non-
      initiating party or parties shall respond in writing to the
      initiating party and shall each provide its written position,
      including the facts and arguments upon which each relies in
      support of its position.

31

d.    Before seeking Court intervention (except insofar as
Paragraph 3, below, should apply), the Parties agree to first
discuss the dispute and to try to resolve it among
themselves, in good faith and as promptly as possible.  This
can include a meeting by telephone or in person and the
exchange of relevant documents and/or other information
which might assist in the resolution of the dispute, but, at a
minimum, should involve some communication between the
initiating and non-initiating parties regarding the dispute.

e.    If the Parties are not able to resolve the dispute among
themselves despite exercising their best good-faith efforts, or
alternatively upon reaching impasse, either party may move
to have the assigned United States Magistrate Judge resolve
the dispute.  It is understood and agreed that the "meet and
confer" requirements set forth above are a prerequisite to the
filing of any motion for resolution of a dispute under this
Agreement by any Party.  Any motion for resolution of a
dispute following good-faith efforts at extrajudicial resolution
of the dispute must include the movant's certification that
such efforts were reasonably made and pursued in good
faith.  The assessment of attorney's fees and costs shall be
determined by the United States Magistrate Judge.

f.    In the event that the assigned United States Magistrate
Judge is unable to serve with regard to this Agreement and

the United States District Judge orders the Parties to Special

Master or other mediator, the Parties shall try to agree to a

Special Master or other mediator as a replacement, and in

the event agreement is not reached, the Parties will ask the

assigned United States District Judge to appoint a

replacement.

g.   The assigned United States Magistrate Judge (or his/her

replacement), upon motion, may permit one or more of the

Parties to take discovery as provided by the Federal Rules of

Civil Procedure, but only as to demonstrably relevant

documents and/or witnesses, if the Magistrate Judge (or

his/her replacement) determines that the informal exchange

of documents or information has not been sufficient to allow

the Parties to present the dispute upon a factual record

adequate for the determination required hereunder.  This

discovery shall be expedited in whatever manner ordered by

the Court.

h.   If mediation with the assigned United States Magistrate

Judge (or his/her replacement) does not result in a resolution

of the dispute within two (2) weeks of the date of such

mediation with the assigned United States Magistrate Judge

(or his/her replacement), any party may make a motion for

the resolution of the dispute by the assigned United States

Magistrate Judge or United States District Judge, in which

event attorney's fees and costs incurred in connection with the dispute are to be awarded and paid in accordance with prevailing law, if at all.  In any such proceeding, any party may present evidence of the assigned United States Magistrate Judge's (or his/her replacement's) recommendations in mediation, if any.

3.      Nothing in this Section (V.A.) operates to prevent any Party from promptly bringing an issue before the assigned United States District Judge (or the assigned United States Magistrate Judge) when exigent facts and circumstances require immediate Court action to prevent a serious violation of the terms of this Agreement, which otherwise would be without meaningful remedy.  The moving papers in such instance shall explain the facts and circumstances that allegedly necessitate immediate action by the Court.  If any such matter is brought before the Court requesting immediate Court action, the opposing party or parties shall be provided with appropriate actual notice (notice to Class Counsel will suffice to serve as notice to the Named Plaintiffs and the Plaintiff Class), and an opportunity to be heard in opposition to the motion, pursuant to the Local Rules of the Court and the Federal Rules of Civil Procedure.  The Court in its discretion may set such procedures for emergency consideration as are appropriate to the particular facts and circumstances, but no such matter may be conducted on an *ex parte* basis.

B.      Standards

Though not all disputes that might arise hereunder are predictable, the Parties agree that for the following kinds of disputes, the following principles or standards shall apply, in general:

34

1.     If, despite its good-faith and reasonable efforts, the Settling Defendant asserts that it is unable to implement certain of the terms of this Agreement, or is unable to implement them within the time provided for herein, the goal of dispute resolution will be to determine a substitute modification or deadline that meets the purposes of this Agreement. "Substitute modification," as used in this subsection, means an alternative access improvement that will not be more expensive or otherwise burdensome for Settling Defendant than the one that Settling Defendant is unable to implement, and one that is consistent with the purposes of this Agreement and Title III of the ADA and its implementing regulations.

2.     If a dispute arises because a party claims that unforeseen circumstances make this Agreement or any order entered pursuant thereto, or any part of either, unjust, any party may seek modification of the Agreement and/or Order, and any such modification should take into account the purposes of this Agreement and the Order, as described in Recital H of this Agreement, and the circumstances that allegedly make the provision(s) unjust.

3.     The resolution of any other dispute should take into account the purposes of this Agreement and any order entered pursuant thereto as set forth in Recital H.

VI.    DEADLINES, FORCE MAJEURE AND ATTORNEYS' FEES

A.    Deadlines

1.     Settling Defendant will apply for the necessary regulatory approval to begin work in accordance with the Facility Modification Plans attached hereto following acceptance by the Court of this Agreement.  Settling Defendant will make good-faith efforts, and will meet and confer in good faith as necessary, to make the

35

barrier removals and/or other modifications and to meet other elements and objectives under this Agreement within three (3) years of the date all necessary permits and approvals are obtained, subject to extension for cause as provided for in paragraph 2, but in any event, all barrier removals or other modifications to be made pursuant to this Agreement shall be completed within four (4) years after the Final Approval Date for this Agreement, or else the Release provisions will expire.  Settling Defendant will notify Class Counsel, in writing, of the date when the project incorporating those modifications set forth in the Facility Modification Plans attached hereto began and ended.  Such notice will be provided within thirty (30) days of the commencement or termination of that project, as applicable.

      2.    Settling Defendant will not be deemed to be in breach of this Settlement Agreement for failure to complete the modifications agreed to as listed or incorporated in Section IV, above, on or before the deadline(s) set forth in sub-paragraph 1 to the extent that such failure to meet the deadline(s) is due to one of the following reasons:

      a.    Failure or refusal of any state or local building or code official or agency to provide permits or certificates for modification work to be performed so long as Settling Defendant gives notice to Plaintiffs of the failure or refusal;

      b.    Failure or refusal of any state or local building or code official or agency, including but not limited to fire officials, to approve plans or to provide permits or certificates for modification work to be performed without triggering any additional construction or remodeling obligations or other

requirements for substantial additional changes.  If such
permits, consents, and approvals cannot be obtained without
such additional conditions, then Settling Defendant and
Class Counsel will negotiate to determine some alternative
modification to improve accessibility which shall not impose
any greater cost or other burden on the Settling Defendant
than the item of construction or modification which would
have triggered the requirements for significant additional
construction or remodeling obligations.  If the parties are
unable to agree upon an alternative modification, they shall
submit the matter to dispute resolution in accordance with
Section V.A.

B.     After-Acquired, Sold, Closed and Lease-ending Facilities

1.     Any facility acquired by Settling Defendant after the Effective Date
of this Agreement is not subject to or covered by this Agreement or any Order entered
pursuant thereto.

2.     If the lease of a Facility of the Settling Defendant terminates and is
not renewed prior to the applicable deadline for modifications, that Facility need not be
modified.  Nothing herein will prohibit Settling Defendant from terminating or moving
operations at or away from any Facility.

3.     Any Facility that is sold or closed prior to the applicable deadline for
modifications need not be modified by the Defendant.  Nothing herein will prohibit
Settling Defendant from selling, closing or otherwise terminating operations at any
Facility.  Settling Defendant will take all reasonable steps to advise any potential

37

purchaser of the existence of the Access Now/Crestwood Litigation and will promptly inform Plaintiffs upon execution of a binding purchase contract or the equivalent thereof. Further, this agreement binds all parties, purchasers, grantees, successors, and assignees.

      C.      Deviations from Facility Modification Plans

          1.      The Parties will undertake to comply fully with the terms of this Agreement and the Facility Modification Plans entered into as a part thereof.  However, the Parties acknowledge that there may be occasions when a deviation from a facility modification plan is warranted or may be excusable.  The Parties agree that the following should guide determinations of whether deviations from Facility Modification Plan terms are warranted or excusable:

          2.      The Settling Defendant shall not be deemed to have violated this Agreement, the ADA or ADAAG with respect to any deviation from ADAAG at its Facility or Facilities, or portions thereof, as to which the Settling Defendant can demonstrate:

              a.      that the deviation resulted because full compliance with ADAAG is not required pursuant to ADAAG 4.1.1(5) at the time the Facility was constructed or altered or as of the Effective Date; or

              b.      that the deviation is within conventional building industry tolerances for field conditions as described in ADAAG 3.2.

          3.      Further, the Settling Defendant shall not be deemed to have violated this Agreement, the ADA or ADAAG with respect to any deviation from the Facility Modification Plan(s) or ADAAG at its Facility or Facilities, or portions thereof,

PROVIDED that Settling Defendant has notified Class Counsel that a deviation may occur and as to which the Settling Defendant can demonstrate:

        a.      that the deviation is an alternative design or technology that provides substantially equivalent or greater access to and usability of the Facility or Facilities for persons with disabilities as described in ADAAG 2.2; or

        b.      that the deviation results from adherence to state or local laws which are more stringent than the ADA and/or its implementing regulations.

D.    Force Majeure

Failure of a party to perform any of its obligations hereunder shall not subject such party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by acts of God, fires, accidents, earthquakes, explosions, floods, wars, interruptions of or delays in transportation, labor disputes or shortages, shortages of materials or supplies, governmental laws, restrictions, rules or regulations, riots, sabotage or any other similar or different circumstances or causes beyond the reasonable control of such party.

E.    Attorneys' Fees

1.    For purposes of this Paragraph, "fees and expenses" includes not only fees and costs incurred for lawyer, paralegal, and law firm staff time and expenses, but also fees and expenses incurred by or to experts, consultants, vendors, and service providers on behalf of the Named Plaintiffs and the Plaintiff Class.

2.    The Parties agreed to a payment of reasonable attorneys' fees and expenses in the amount of $35,000.00, which amount was paid to Class Counsel after

completion of a detailed expert inspection of the Settling Defendant's Facilities.  This payment to Class Counsel for fees and expenses relates only to those actions taken in this Access Now/Crestwood Litigation with respect to the Settling Defendant, and therefore constitutes only a partial resolution or compromise of the claims of Class Counsel for reasonable fees and expenses in the Access Now/Crestwood Litigation, but a complete resolution or compromise of any claim(s) of Class Counsel for reasonable fees and expenses with respect to the Settling Defendant, with the exception of those fees that may be assessed with respect to the resolution of disputes as envisioned herein.

3.     Payment by Settling Defendant of the amount set forth in Paragraph VI.E.2. shall be in complete satisfaction of any and all claims for attorneys' fees and expenses under federal or state law which Named Plaintiffs, the Class, or Class Counsel have or may have against Settling Defendant arising out of or in connection with the Access Now/Crestwood Litigation and the settlement of that litigation as to Settling Defendant herein, including but not limited to any claims for fees and expenses involved in litigating the Access Now/Crestwood Litigation, and negotiating and implementing this Agreement or any Order entered pursuant thereto, including fees and expenses incurred through the final disposition and termination of the Access Now/Crestwood Litigation.

4.     Settling Defendant is responsible to pay all of the vendors, experts, and other providers of services or goods to or for the benefit of Named Plaintiffs or the Class who do or may have a claim or right of compensation in connection with the provision of notice to the class in this litigation.

5.     Nothing in Section VI.E. is intended to remove or alter Settling Defendant's obligations to pay certain costs and expenses of implementing this Agreement, which obligations are specifically set forth elsewhere in this Agreement.

6.     Settling Defendant shall bear its own attorneys' fees and costs.

VII.   CLASS SETTLEMENT - NOTICE, FAIRNESS, REASONABLENESS

A.     Class Settlement

This Agreement is a Stipulation for Settlement as between the Settling Defendant, on the one hand, and the Named Plaintiffs and, to the fullest extent permitted by law, the Plaintiff Class, on the other hand.  The Parties fully intend, and hereby expressly acknowledge that intent, that this Agreement will resolve all disputes which have or could have arisen under or related to Title III of the ADA and/or its implementing regulations, relating to the accessibility of the Settling Defendant's Facility(ies) to Persons with Disabilities, and that this Agreement will be binding upon the Parties, including, to the greatest extent permitted by law, the Plaintiff Class.  This Agreement is subject to, and conditioned upon, the Approval of the Court as to the Agreement's reasonableness and fairness to the Plaintiff Class.

B.     Notice of Settlement

Within five (5) business days of the Effective Date of this Agreement, Class Counsel and/or counsel for the Settling Defendant shall cause to be filed with the United States District Court for the Northern District of Texas, Dallas Division, a Notice of Partial Settlement, which Notice of Partial Settlement shall include an executed original of this Agreement, with all attachments, and a proposed Summary Notice.  The Parties shall request in the Notice of Partial Settlement that the Court issue an Order granting preliminary approval of the Agreement and setting a date, at least five (5)

weeks from the date of the Order, for a Fairness Hearing, in which the Court shall evaluate the fairness and reasonableness of the Agreement with respect to the Plaintiff Class.

C.    Notice to Plaintiff Class

After the Court issues an Order setting, or otherwise sets, a Fairness Hearing date, the Parties shall provide notice to the Plaintiff Class in the manner detailed below, and/or as otherwise proscribed by the Court in any subsequent directive. Because the Complaint seeks injunctive relief only, without monetary damages, and the settlement Class was certified pursuant to Fed. R. Civ. P. 23(b)(2), notice to the Class is not required, but will be provided by agreement of the Parties. Such notice will be provided in the form of a summary description of the significant features of this Stipulation for Settlement and the exhibits hereto (the "Summary Notice") in the form of Exhibit 5 hereto. The Parties shall develop jointly and publish as soon as reasonably practicable to the Class for a three-week period as follows: (a) the Summary Notice will be published by Access Now, Inc. to its members by newsletter or announcement on Access Now, Inc.'s internet website; (b) the Summary Notice will be prominently posted in at least two public locations in Defendant IOM Health System, LP.'s Facilities, including the main admissions and discharge areas of each; (c) the Summary Notice will be published in the largest newspaper of general circulation in the regions where Defendant IOM Health System, LP.'s Facilities are located. The language constituting the first paragraph of the Summary Notice (i.e., from "NOTICE OF CLASS ACTION SETTLEMENT" to the subheading "SUMMARY OF LAWSUIT") will be in bold-faced 14-point font, while all other language will be in a font no smaller than the customary font-size used by each newspaper in its legal notices section. Language advising that Class Members' claims

will be barred should appear in bold when such does not increase the cost of placing the notice; (d) the Summary Notice will be published by Defendant IOM Health System, LP. on its websites, if any; and (e) the Summary Notice will be sent by e-mail to at least five (5) Protection & Advocacy groups (one of which shall be the National Association of Protection and Advocacy Systems) and at least two (2) Centers for Independent Living for persons with disabilities in the regions where Defendant IOM Health System, LP.'s Facilities are located.  This Agreement specifically reflects the nature of Defendant's Facilities, which are community based hospitals.

D.    Fairness and Reasonableness of this Agreement

The Parties entered into this Agreement after significant good-faith, arms-length negotiations between the Parties, counsel, and with the assistance of the Court. This Agreement reflects the conclusion of each party that this Agreement and all Orders and Notices to be issued pursuant hereto, and all obligations assumed hereunder, are in the party's best interest, and fair and reasonable to the Named Plaintiffs and to the Plaintiff Class.

E.    Cooperation in the Determination of Fairness

The Parties shall cooperate with each other and with the Court in providing all information, testimony, or evidence requested by the Court or otherwise necessary to the Court's determination of the fairness and reasonableness of this Agreement.

VIII.    FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT AND DISMISSING SETTLING DEFENDANT

A.    Procedure Following Fairness Hearing

Following the Fairness Hearing, if the Court agrees with the Parties that this Agreement is fair, adequate and reasonable, then the Court shall enter a Final Order and Judgment Approving Class Action Settlement and Dismissing Settling Defendant ("Final Order and Judgment"), which Final Order and Judgment shall: (1) approve the Agreement, resolving any objections thereto; (2) direct the parties, at such time as the Final Approval Date (as defined in Section II.A.14. of this Agreement) shall be attained, to consummate this Agreement in accordance with its terms; (3) direct the entry of the judgment as a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; and (4) direct the dismissal of the Settling Defendant.

B.      Parties to Cooperate in Attaining Final Order and Judgment

In furtherance of the Court's efforts, the Parties shall submit additional evidence, modifications to the Agreement, or proposed orders as directed by the Court.

IX.     RELEASES AND COVENANTS NOT TO SUE

A.      Releases and Covenants Not to Sue by Named Plaintiffs and the Plaintiff Class

1.      In exchange for good and valuable consideration, including Settling Defendant's agreement to undertake and perform the modifications with respect to its Facility(ies) as specified in Section IV, Named Plaintiffs, on behalf of themselves, and, to the fullest extent permitted by law, on behalf of all Class members and all persons purporting to claim under them, including heirs and assigns, children, spouses and significant others and companions ("Releasing Parties"), do hereby release, acquit, waive, and forever discharge Settling Defendant and all of Settling Defendant's predecessors, successors, affiliates, assigns, offices, directors, employees, attorneys, agents, insurers, owners, shareholders, parent companies and subsidiaries (the

"Released Parties"), from any and all of the Released Claims, as defined in Section IX.B., below.  None of the Releasing Parties may at any time assert any of the Released Claims against any of the Released Parties at any time during the Release Effective Period for this Agreement.

      B.     Released Claims

          1.     With respect to the Settling Defendant's Facility(ies) as defined herein, the Released Claims are all claims, rights and contentions for declaratory or injunctive relief, penalties or damages under or related to Title III of the ADA and/or its implementing regulations which were or could have been asserted by the Plaintiffs or the Class in the Access Now/Crestwood Litigation relating to the accessibility of the Settling Defendant's Facility or Facilities, including but not limited to the removal of any physical, communication, or operational barrier (or alleged barrier) to access, the modification of the Facility(ies) to provide or improve access in any respect, or otherwise to obtain relief for injuries arising out of or relating to the physical, communication, or operational access features of the design, construction or condition of the Facility or Facilities.

                  a.     Without limiting or expanding the foregoing, and by way of example only, the Released Claims include any claim or contention, brought during the Release Effective Period of this Agreement, under Title III of the ADA and/or its implementing regulations that the Settling Defendant is required to make any modifications to its Facility(ies) or operations other than or beyond those modifications which are set forth in this Agreement.

b.    Without limiting or expanding the foregoing, and by way of example only, the Released Claims include any claim or contention, brought during the Release Effective Period of this Agreement, under Title III of the ADA and/or its implementing regulations that the Settling Defendant must modify those portions of Settling Defendant's Leased Premises as to which the Settling Defendant does not have both a leasehold interest and an exclusive possessory interest and as to which, therefore, the Settling Defendant may not exercise control.

2.    Any contention or claim based on the alleged failure of the Released Parties to comply with the requirements of this Agreement or any Order entered with respect to this Agreement within the time allotted in Section VI.A.1, is a Released Claim except to the extent it may be asserted in the manner set forth in Section V.

3.    [Reserved]

4.    Each Named Plaintiff warrants and represents that no one other than he or she has any right, claim or cause of action against the Released Parties arising out of the alleged instance or instances in which he or she was alleged discriminated against or was allegedly denied full and equal access to or at one or more of Settling Defendant's Facilities.  This warranty and representation shall survive the execution of this Agreement and the dismissal of the Settling Defendant from the Access Now/Crestwood Litigation.  Each Named Plaintiff shall hold the Released Parties harmless from and against any claims, damages, litigation, causes of action,

46

and expenses, including reasonable attorneys' fees, resulting from any breach by him or her of this warranty and representation, including any breach of his or her release of his or her Released Claims.

      5.     The Named Plaintiffs and all Class Members, individually and as a Class, for themselves, their attorneys, spouses, executors, representatives. heirs, successors, and assigns, in consideration of the relief set forth in this Agreement, fully and finally release and forever discharge the Settling Defendant and each of its respective present, former, or future officers, directors, shareholders, agents, employees, representatives, consultants, attorneys, successors, and assigns from any and all past and/or present claims, rights, demands, complaints or actions that were or could have been brought, whether known or unknown, for individual and/or class relief, arising under or related to Title III of the ADA and/or its implementing regulations concerning any of the Settling Defendant's Facility(ies).  This Agreement in no way prohibits any Class Member from presenting any accessibility issue to the U.S. Department of Justice at any time.

      6.     In addition to the foregoing, a Releasing Party may not assert a claim under or relating to Title III of the ADA and/or its implementing regulations against a Released Party to the effect that:  (a) additional barrier removal is or became required or Readily Achievable during the pendency of the Access Now/Crestwood Litigation as to the Settling Defendant or during the Release Effective Period of this Agreement, under any circumstances, or, (b) additional barrier removal is or became required or Readily Achievable with respect to the Settling Defendant after Final Approval but before the deadline set forth in Section VI.A.1, unless there has been and such claim is due to:  a change in the law or a material, substantial and unforeseeable change in

circumstances (except that the prerequisite of unforeseeability does not apply with regard to Settling Defendant's future financial condition).

X.     MISCELLANEOUS

     A.     Cooperation

          1.     Claims Against Third Parties

Plaintiffs and Class Counsel shall reasonably cooperate with the Settling Defendant in the prosecution of any claims for indemnity and/or contribution that Settling Defendant may choose to bring against the architects and/or contractors of the Facility(ies).

          2.     Actions Required Under the Agreement or any Order entered with respect to this Agreement

The Parties hereby agree to reasonably cooperate with one another in the fulfillment of the obligations set forth in this Agreement and in any Order entered with respect to this Agreement or as a result thereof.  The Parties shall take such other and further steps as are reasonable and necessary to obtain Approval and Final Approval of this Agreement and to effectuate the purposes of this Agreement.

     B.     Defense Documents

Documents and information produced or provided by the Settling Defendant to Plaintiffs or Class Counsel in discovery during the Access Now/Crestwood Litigation, including but not limited to in connection with informal discovery during settlement negotiations or informal document exchange as part of dispute resolution under Section V.A.2. of this Agreement (hereinafter "Defense Documents"), will be handled as follows:

a.    No later than the end of the duration of the period for implementation of the Facility Modification Plan(s) as set forth in Section VI.A.1., Plaintiffs and Class Counsel shall return to the Settling Defendant or destroy all Defense Documents and shall inform the Settling Defendant in writing that they have done so.  Counsel for the Settling Defendant shall remind Class Counsel of this obligation 60 days before the deadline for return of such Defense Documents.  If Counsel for the Settling Defendant is late in reminding Class Counsel, the obligation of returning or destroying Defense Documents will still exist, but Class Counsel and Plaintiffs shall have at least 60 days after written reminder by Counsel for the Settling Defendant within which to comply with the obligation to return or destroy Defense Documents.

b.    Until then, Plaintiffs and Class Counsel shall maintain the Defense Documents in a manner consistent with the terms of the agreements and orders under which the documents were produced, including confidentiality agreements or orders.

C.    Arms-Length Negotiations; Construction

This Agreement was entered into after significant good-faith, arms-length negotiations between the Parties and counsel, and with the assistance of the Court. Each party hereto has executed this Agreement only after carefully reading it and reviewing it with counsel.  This Agreement has been entered into without any coercion

and under no duress. This Agreement reflects the conclusion of each party that this Agreement and the Final Order and Judgment to be entered pursuant thereto, and the releases, waivers and covenants contemplated hereby are in the best interests of the Parties. The content of and language in this Agreement was approved by counsel for each of the parties and, in the event interpretation of any alleged ambiguity herein is requested or required, there shall not be a presumption or construction against either side as the drafter. Except as expressly provided herein, this Agreement is not intended to confer upon any other person or entity any rights or remedies.

D.    Reservation

Nothing herein is intended to be or may be construed as a waiver of the Settling Defendant's right to operate its business free from unreasonable intrusion into its papers, effects or property by Plaintiffs or Class Counsel. Nothing herein is intended to be or may be construed as a waiver of the Settling Defendant's right to operate its business free from unreasonable restraint on its ability to relocate, suspend, or discontinue services or programs, or to supplement, add, or begin providing services or programs.

E.    Entire Agreement

This Agreement, including the Exhibits hereto, is an integrated contract and contains the entire understanding between the Parties hereto regarding the matters set forth herein. No representations, warranties, or promises have been made or relied upon by any party hereto other than those which are set forth in those named documents. This Agreement supersedes any and all other prior agreements or drafts or memoranda of understanding, either written or oral, between the Parties with respect to the subject matter hereof, with the exception of the parties' confidential Fees and Costs

Stipulation Agreement dated December, 2001, as amended.  This Agreement cannot be modified orally and can only be modified in writing as set forth in this Agreement or as required by an Order of the Court.

F.      Deadlines Falling on Weekends or Holidays

To the extent that any deadline set forth in this Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

G.      Authority to Bind

Class Counsel represent and warrant that they are authorized to sign on behalf of, and to bind, the Class as certified by the Court to this Agreement.  Each of the Named Plaintiffs shall by their signatures personally bind themselves to this Agreement. The Authorized Representative of the Settling Defendant represents and warrants that he/she is authorized to sign on behalf of, and to bind, the Settling Defendant to this Agreement.

H.      Multiple Originals/Execution in Counterparts

This Agreement may be signed in multiple such that the Court, Plaintiffs, and the Settling Defendant shall each have a duplicate original, each of which shall be deemed an original of this Agreement.  When each party has signed and delivered at least one counterpart to the other party to this Agreement, the counterparts, taken together, shall be binding and effective as to the parties to this Agreement.

I.      Severability

Whenever possible, each provision and term of this Agreement shall be interpreted in such a manner as to be valid and enforceable; provided, however, that in the event that after Final Approval hereof any provision or term of this Agreement and

51

any orders entered pursuant thereto should be determined to be or rendered

unenforceable on collateral review, all other provisions and terms of this Agreement and

the application thereof to all persons and circumstances subject thereto shall remain

unaffected to the extent permitted by law.  If any application of any provision or term of

this Agreement to any specific person, party, or circumstance should be determined to

be invalid or unenforceable, the application of such provision or term to other persons,

parties, or circumstances shall remain unaffected to the extent permitted by law.

      J.      Modification of the Agreement

      Class Counsel and the Settling Defendant may jointly agree to modify the

Agreement.  In the event that changed circumstances make a modification of the

Agreement necessary to ensure its purposes are fully effectuated, but good-faith

negotiations seeking such modification are unsuccessful, any party to the Agreement

shall have the right to move the Court to modify this Agreement.  Such motion shall be

granted only upon the movant proving to the Court by clear and convincing evidence

that changed circumstances make such modification necessary and that the

modification will not materially increase the cost to the Settling Defendant of compliance

(out-of-pocket or otherwise), after an opportunity for the other parties to be heard on the

motion.  Any such modification to this Agreement by the Court shall be ordered in such

a fashion that will limit the cost to the Settling Defendant (out-of-pocket or otherwise) to

the extent possible consistent with effectuating the purposes of this Agreement.  The

procedures for negotiations about modifying this Agreement (and, if necessary, for

resolution of disputes by the Court) shall be the same as those set forth in Section V.

XI.    SIGNATURES

A.    Signatures of Counsel

By signing below, counsel for the Parties indicate their approval of the form of this Agreement (and Exhibits hereto), and, in the case of Class Counsel, their representation and warranty of authority to bind the Class as certified, and their acceptance of the provisions regarding attorneys' fees:

Dated:    1/4/07

**DE LA O, MARKO,**
**MAGOLNICK & LEYTON**
3001 S.W. Third Avenue
Miami, Florida  33129
Telephone:  (305) 285-2000
Facsimile: (305) 285-5555
Email: marko@delao-marko.com
National Counsel for Access Now, Inc.

By:

    MIGUEL M. DE LA O
    Florida Bar No. 822700
    DAVID EVERETT MARKO
    Florida Bar No. 939633
    marko@dmmllaw.com

Dated:    1/10/07

Dated:

**MOSELEY, MARTENS, LLP**
3878 Oak Lawn Avenue, Ste 400
Dallas, TX 75219-4469
Telephone:  (214) 525-3900
Facsimile: (214) 525-3939
Local Counsel for Access Now, Inc.

By:

    JOHN FREEMAN
    State Bar No. 07425500
    JOHN MITCHELL NEVINS
    State Bar No: 14935800
    jnevins@mslawfirm.com

BAKER & McKENZIE
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201
Telephone No. (214) 978-3000
Facsimile No. (214) 978-3099
Counsel for Defendants

By:

    Ronald E. Manthey
    State Bar No. 12927400
    Ron.Manthey@bakernet.com
    John D. Bosco
    State Bar No. 24045533
    John.D.Bosco@bakernet.com

B.      Signatures of the Parties

In witness whereof, the undersigned have executed this Agreement as of

the Effective Date:

Named Plaintiffs and Representatives of Class on Behalf of Themselves and the

Class:

_____          _____
Danielle Black                                      Margarita Grau

_____          _____
Julio Grau                                           Access Now, Inc.

Dated: ____1/4/07_____          By: _____
                                                    Miguel M. de la O, Esq.
                                                    David E. Marko, Esq.
                                                    Class Counsel and authorized
                                                    signatory for Class


IOM Health System, LP. d/b/a Lutheran Hospital of Indiana



Dated: ____1/10/07_____          By: _____